

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

June 30, 1959

Honorable Bill Allcorn
Commissioner
General Land Office
Austin 14, Texas

Dear Commissioner Allcorn:

Opinion No. WW-657

Re: Validity of the por-
tion of the Willis
Avery grant not spe-
cifically covered by
court decree.

   In your opinion request of May 11, 1959, you have
stated that veterans have made applications to purchase two
tracts of land the title to which originates with Willis Avery
who obtained a colonial grant from the Mexican Government for
4428 acres on March 13, 1832, by virtue of a contract made in
1827 between that Government and Stephen F. Austin for the
colonization of an area now known as Austin's Little Colony.
Avery located a part of his grant, however, beyond the bound-
aries of the area embraced within Austin's Little Colony and
it appears that the two tracts in question are situated in a
portion of this outlying area.

   You have further informed us that, according to the
records on file in the General Land Office, the H.T. & B. Ry.
Co. on April 10, 1870 surveyed Section 4 (for the State) and
on April 12, 1870 surveyed alternate Section 3 (for the rail-
road). These sections are located, in part at least, on a
portion of the Avery location lying entirely beyond the bound-
aries of Austin's Little Colony. Your letter is silent as to
whether Section 3 was ever patented but you do advise that
although there have been successive sales and cancellations
of various parts of Section 4, no patent appears to have been
issued nor are there presently outstanding any sales obliga-
tions with respect to any part thereof.

   In surveying the two tracts in question the surveyor,
by his field notes, has placed them as a part of said Sections
3 and 4 while, as heretofore indicated, the chain of title on
these two tracts stems solely from Willis Avery as a part of

his headright grant. In view of these circumstances, as well as certain reported cases and legislative enactments herein-after more fully discussed, you have asked our opinion with respect to (1) whether the Willis Avery survey not covered by court decree is a valid grant and if not, (2) whether the State should consider the area as State owned and permit occupants thereof to purchase and obtain a patent under the provisions of Article 5421c, Section 5, Revised Civil Statutes of Texas.

For the reasons and subject to the limitations here-inafter discussed, it is our belief that the Avery grant is valid. Fortunately, the question presented has received rather extensive, if not conclusive, judicial consideration.

In the case of Hamilton v. Avery, 20 Tex. 612, decided by the Supreme Court in 1857, it appears that Hamilton in April of 1847 (some 15 years subsequent to the Avery grant) surveyed and located a tract of 1120 acres on a portion of the Avery lo-cation lying beyond the limits of Austin's Little Colony. In 1849 he instituted suit against Avery to establish title to the 1120 acre tract and the validity of his location as against the 1832 grant to Avery was thus squarely before the Court. The trial court upheld the Avery grant and while a review of this judgment was pending on appeal to the Supreme Court, the Legis-lature in 1854 passed, and the Governor approved, an Act which confirmed and validated all grants of headrights made to colo-nists before November 13, 1835 "and lying and being intersected or crossed by the boundary line of Robertson's Colony and Aus-tin's Little Colony, and being part in one of said colonies and part in the other". Acts, 5th Leg., Ch. XXVII, 3 Gammel's Laws of Texas 1473. The date of the Avery grant of course falls within the time limitations of this Act and you have verbally advised us that as a matter of fact such grant lies partly within Austin's Little Colony and partly within Robertson's Colony, thus bringing Avery's grant within the provisions of the Act. This Act of Confirmation, however, contained a saving clause or pro-viso "that nothing herein contained shall be so construed as to affect the rights of third parties."

The Supreme Court held that there was no authority under Austin's contract of 1827 for the Commissioner to make a grant which extended beyond the limits of the area of such Col-ony, and that with respect to the portion of Avery's grant lying beyond the limits of the Colony the purported grant was null and void. And, in construing the Validating Act, the Court further held that Hamilton's location and survey, having taken place be-fore the passage of the Act, was squarely within the protection of the saving clause thereof. While the Court was not called

upon to pass upon the affirmative effect of the Validating Act
with respect to portions of the Avery grant upon which no ad-
verse locations had been made prior to its passage, implicit,
we think, in the Court's opinion is sanction for the proposi-
tion that the Act legally was effective to validate and confirm
the entire Avery grant except only as to intervening locations
of third parties.

Following the decision in the Hamilton case, the Leg-
islature in 1858 passed an Act authorizing and requiring the
Commissioner of the General Land Office to issue a headright
certificate for one league of land to Willis Avery, among other
persons. Acts, 7th Leg., Ch. 143, 4 Gammel's Laws of Texas
1335. The records of your office show that pursuant to this
Relief Act a league and labor of land in Kendall County was
patented to Willis Avery on August 7, 1862.

It has been suggested that the patent issued to Avery
pursuant to said Act of 1858 was in lieu of all lands, or at
least all outlying lands, contained in the original Avery grant
of 1832. This very contention was in fact made in the case of
Griffith v. Sauls, 77 Tex. 630, 14 S.W. 230 and was rejected by
the Supreme Court. With respect thereto the opinion of the
Commission of Appeals, adopted by the Supreme Court, stated, in
part:

"It was proved on the trial that the memorial
of Avery and other colonists to the Legislature
asking for the grant of a league certificate each
placed their claim upon the ground that they had
been ousted of their grants to lands supposed to
have been located in Austin's Little Colony, and
that the Act of 1858 was passed in consideration
of their loss of land by the decision in Hamilton
v. Avery.

"We think the evidence sustains the finding
that the grant of 1858 of the league certificates
was made in compensation for the lands lost  by the
decision in Hamilton v. Avery, and not in lieu of
all lands held by the beneficiaries of that act as
colonists of Austin's Little Colony." P. 635.

Once again the Supreme Court had occasion to construe
the Validating Act of 1854 in the case of Shepherd v. Avery, 95
Tex. 501, 68 S.W. 505. There, as in the Hamilton case, a title
dispute arose with respect to a bounty warrant located by W. C.
Hays on a portion of the outlying Avery grant and filed with the

State Land Office in 1849. Apparently the parties in court considered the Hays location superior to the Avery grant perforce the holding in the Hamilton case and the sole issue (the physical facts of adverse possession for three years being otherwise admitted) was whether the Avery grant constituted "color of title" legally sufficient to predicate the claim of adverse possession by the Avery heirs under the three-year Statute of Limitation. It being conceded that a junior patent constitutes such "color of title", it was contended that as to the Hays location the Avery grant was analogous to a junior patent and thus supplied the requisite "color of title".

The trial court directed a verdict for the Avery heirs, the Court of Civil Appeals divided on the legal issue and certified the question to the Supreme Court of whether the majority or the dissenting opinion of that court was correct. The majority of the Court of Civil Appeals construed the saving clause contained in the Validating Act of 1854 as excepting from its granting operation lands theretofore legally located by third parties. The Supreme Court approved this construction and with respect thereto stated, in part:

"If the proviso to that statute be omitted, the act would be a grant by the State of Texas for the land which had been previously located by the Avery grant, and would have the legal effect of a junior patent. But with the proviso inserted in the act, it does not constitute a grant of the land as against the location and survey under the Hays bounty warrant, made prior to the enactment of the law, because it is specially provided that the act shall not be construed so as to 'affect the rights' of such persons. In other words, as to the survey which had been made upon this land prior to the passage of that act, the act itself was to be considered as if it had never passed. It granted nothing as against the owner of that location and survey. If it were held that such a grant constituted color of title as against the Hays location it would 'affect the rights' of the parties holding under that survey, which the terms of the statute itself forbid."

It is highly significant, we think, that not even the parties, much less the courts, in the cases dealing with the Avery grant in connection with the Validating Act of 1854

have ever intimated that the Act was not legally effective to validate Avery's original grant except only as to locations made thereon before it was passed. This is not surprising, however, because it has long been settled that the Legislature possesses plenary power over the disposition of the public domain subject only to certain limitations contained in our Constitution, none of which are applicable to the Act in question. 34 Tex.Jur., p. 46, Sec. 25.

The most persuasive argument which could (at one time) have been made against the plain terms of the Validating Act is that the Relief Act of 1858 was made in lieu of the lands originally granted to Avery in 1832. The Relief Act, however, contains no such provision on its face and the Supreme Court in the Griffith case, supra, has stated in no uncertain terms that the land there authorized was in compensation only for the land lost by the decision in the Hamilton case. And, as we have heretofore stated, it is our opinion that the proper construction of this decision inescapably leads to the conclusion that the only lands lost thereby were those upon which third parties located prior to the passage of the Validating Act.

It is therefore our opinion that the Avery grant of 1832 was effectively validated by the Act of 1854 as to all land contained in the original field notes with the exception of tracts which were located thereon prior to the passage of the Validating Act. Since Sections 3 and 4, heretofore discussed, were not located or surveyed until 1870, it necessarily follows that such locations are invalid to the extent that they may be in conflict with the Avery grant of 1832. The actual location of these Sections upon the ground is, of course, a matter which can be determined only by an accurate ground survey.

Our conclusion with respect to the validity of the Avery grant necessarily disposes of your second and remaining question.

## SUMMARY

The effect of the Validating Act of 1854 was to confirm and validate the 1832 grant to Willis Avery as to the entire area embraced within the original field notes except locations made thereon prior to the passage of the Act. The locations of said Sections 3 and 4

having been made subsequent to the passage of
the Validating Act are invalid to the extent
that they may be in conflict with the Willis
Avery grant.

Very truly yours,

WILL WILSON
Attorney General of Texas

By *James H. Rogers*

James H. Rogers
Assistant

JHR:dhs

APPROVED:
OPINION COMMITTEE

Geo. P. Blackburn, Chairman
Joseph G. Rollins, Jr.
Grundy Williams
Jay Howell
Marietta Payne

REVIEWED FOR THE ATTORNEY GENERAL
BY:
    W. V. Geppert